IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TERENCE PENGRA,<br>    Plaintiff,<br><br>vs.<br><br>QWEST COMMUNICATIONS COMPANY, LLC,<br>    Defendant. | MEMORANDUM DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS<br><br><br>Case No. 2:11-CV-1034 TS |

This matter is before the Court on Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.[1] As set forth below, the Court will grant in part and deny in part Defendant's Motion.

I.   BACKGROUND

This matter arises out of an alleged contract dispute between Plaintiff Terence Pengra ("Mr. Pengra") and Defendant Qwest Communications Company, LLC ("Qwest" or "Qwest Communications").[2] Mr. Pengra is an employee of Qwest Corporation and a member of the union, Communications Workers of America (the "Union").[3] Mr. Pengra originally worked for Qwest Corporation in Park City, Utah, before being terminated in 2004 or 2005. He was

---

[1] Docket No. 2.

[2] As discussed further below, Qwest is not a proper party to this case because it is not Mr. Pengra's employer nor is it a party to the agreements Mr. Pengra seeks to enforce. Mr. Pengra's employer is Qwest Corporation.

[3] Docket No. 3, at 2.

1

successful, however, in challenging that termination under the collective bargaining agreement (the "CBA") between the Union and Qwest Corporation and was eventually reinstated as an employee pursuant to a June 23, 2005 agreement (the "Settlement Agreement").[4] Contrary to Mr. Pengra's assumption, but not the explicit terms of the Settlement Agreement, he was reinstated to Qwest Corporation's Provo, Utah office rather than to its Park City, Utah office.[5] Upset that he was not reinstated to Qwest Corporation's Park City office, Mr. Pengra protested to both the company and the Union concerning his desire to return to work in Park City. As a result of these protests, Qwest Corporation and the Union (on behalf of Mr. Pengra) agreed on May 10, 2007, to amend the Settlement Agreement so as to create a mechanism whereby Mr. Pengra could return to work in Park City (the "Amendment").[6] The Amendment obligated Qwest Corporation to grant Mr. Pengra the next available opening for a Network Technician position in the Park City area subject to certain staffing priorities.[7]

Mr. Pengra alleges in his Complaint that Qwest has violated the Amendment on at least two occasions by transferring lower-priority employees to openings in Park City. He alleges that these two transfers occurred "sometime in 2009" and "October 2010."[8] Mr. Pengra also

---

[4] *Id*. at 2-4, Exhibit C; Docket No. 1, at 2-3.

[5] Docket No. 1, at 3.

[6] *Id*. at 4-6.

[7] Docket No. 3, Exhibit C. The Amendment reads: "Mr. Pengra will be granted the next available Network Technician opening in Park City, Utah. The order of consideration will be after Article 19 (Force Adjustment) and/or Article 23 (Medical Restrictions) candidates and before Article 20 (Lateral Force Rearrangement) or Article 21 (Post and Bid Process) candidates."

[8] Docket No. 1, at 6-7.

contends that Qwest has taken the position that it does not have to comply with the Amendment or has transferred lower priority employees without violating the Amendment.[9] Consequently, Mr. Pengra has filed a Complaint alleging that Qwest (1) has breached the Amendment to the Settlement Agreement by not transferring him to Qwest's Park City office, and (2) has breached the covenant of good faith and fair dealing by (a) not providing information to Mr. Pengra about openings in the Park City area, (b) not complying with the priorities set forth in the Amendment, and (c) interpreting and applying the Amendment in an arbitrary and unfair manner.[10] Mr. Pengra seeks monetary damages for Qwest's failure to transfer him to its Park City office, including damages for lost wages due to not receiving the appropriate transfer, and the additional costs incurred while commuting from his home in Heber, Utah to Provo, Utah.[11]

## II. STANDARD OF REVIEW

In considering a motion to dismiss under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Mr. Pengra as the nonmoving party.[12] "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss."[13] A motion to dismiss under Rule 12(b)(6) may be granted when "the well-pleaded facts" fail to "plausibly give rise to an

---

[9] *Id.*

[10] *Id.* at 8-11.

[11] *Id.* at 9, 12.

[12] *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002).

[13] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

entitlement to relief."[14] The court "need not accept . . . conclusory allegations without supporting factual averments."[15] "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[16]

### III. DISCUSSION

Qwest has filed a Motion to Dismiss Mr. Pengra's Complaint, arguing that it should be dismissed with prejudice for at least four reasons. First, Qwest argues that it is not Mr. Pengra's employer, nor a party to the agreement at issue here. Second, Qwest argues that Mr. Pengra's state law claims are preempted and barred by §301 of the Labor Management Relations Act ("LMRA"). Third, Qwest argues that Mr. Pengra's claims are improper even if stated as claims under §301 of the LMRA because Mr. Pengra did not exhaust his administrative remedies and has not alleged any Union breaches. Finally, Qwest argues that Mr. Pengra's claims are barred by the applicable six-month statute of limitations.[17]

In his Memorandum in Opposition to Defendant's Motion to Dismiss, Mr. Pengra concedes that Qwest Corporation is the proper defendant in this case, not Qwest, and suggests that he will file a motion for leave to amend his complaint to name Qwest Corporation as the proper defendant.[18] Mr. Pengra also concedes that his claims are preempted by §301 of the

---

[14] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

[15] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[16] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[17] Docket No. 3, at 4-10.

[18] Docket No. 8, at 3.

LMRA, and again, suggests that he will move for leave of the court to file an amended complaint asserting such claims.[19] As to Qwest's argument that Mr. Pengra's claims are improper even if stated as claims under §301, Mr. Pengra argues that he has not made the necessary allegations for a hybrid claim under §301 because he has not yet asserted any claim under §301 of the LMRA. Mr. Pengra asserts that Qwest is improperly speculating as to whether Mr. Pengra could in fact bring such a claim.[20]

With regard to whether Mr. Pengra's forthcoming claims under §301 are barred by the applicable statute of limitations, Mr. Pengra contends that he did in fact act in a timely manner. In support of this contention, Mr. Pengra offers new allegations not contained in his Complaint suggesting that Mr. Pengra's §301 hybrid claims, if alleged, would be timely.[21] His new allegations are: (1) that on February 23, 2011, he sent a letter to Qwest Corporation and various Union officials, notifying them of his concerns of non-compliance with the Amendment and his desire for action; (2) Qwest Corporation responded by having an in-house attorney notify Mr. Pengra's attorney that Qwest Corporation was looking into the matter, but neither Mr. Pengra's attorney nor Mr. Pengra received any further communication from Qwest Corporation; and (3) the Union provided no response to the February 23, 2011, letter.[22]

---

[19] *Id.* at 3-5.

[20] *Id.* at 5-6.

[21] These new allegations are set forth in Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss. Docket No. 8.

[22] Docket No. 8, at 6-7.

In response, Qwest asserts that even if Mr. Pengra petitions this court for leave to file an amended complaint, that petition should be denied because any amendment would be futile.[23] Qwest contends that any amendment would be futile because the alleged breaches occurred "sometime in 2009" and in "October 2010"—well outside the six-month statute of limitations.[24] As to the new allegations proffered by Mr. Pengra, Qwest properly notes that they should not be considered in the context of this motion to dismiss because they were not included in Mr. Pengra's Complaint.[25] In addition, Qwest argues that where, as here, the collective bargaining agreement does not expressly permit reopening of a grievance, Mr. Pengra's efforts to do so do not toll or re-trigger the statute of limitations.[26]

Each argument will be addressed in turn.

A.    PROPER DEFENDANT

Both parties stipulate that Qwest Communications is not the proper defendant. Thus, the Court grants Qwest's Motion to Dismiss with prejudice on the ground that Qwest Communications is not the proper defendant.

B.    PREEMPTION

Both parties agree that Mr. Pengra's claims are preempted by §301 of the LMRA. Thus, the Court grants Qwest's Motion to Dismiss with prejudice on the ground that Mr. Pengra has failed to make the appropriate claims under federal law.

---

[23] Docket No. 9, at 2-5.

[24] *Id*. Mr. Pengra's Complaint was filed on August, 12, 2011.

[25] *Id*. at 3-4.

[26] *Id*. at 4-5.

C.      POTENTIAL §301 CLAIMS

Qwest argues that Mr. Pengra's Complaint should be dismissed with prejudice because any possible amendment to his Complaint would exceed the applicable statute of limitations and therefore be futile. Thus, Qwest argues that Mr. Pengra should be denied leave to amend his Complaint, even though Mr. Pengra has not yet filed any such motion with the Court.

Fed. R. Civ. P. 15(a)(2) provides that leave to amend shall be given freely. However, the district court "may deny leave to amend where amendment would be futile. A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."[27] Under Tenth Circuit precedent, "[a] dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile."[28]

In addition, when ruling on a motion to dismiss under Rule 12(b)(6), "[g]enerally, the sufficiency of a complaint must rest on its contents alone."[29] While there are a few exceptions to this rule,[30] Mr. Pengra's new allegations do not fall within these exceptions. Thus, Mr. Pengra's new allegations will not be considered in the context of this motion to dismiss.

---

[27] *Bradley v. Val-Meijas, M.D.*, 379 F.3d 892, 901 (10th Cir. 2004) (*quoting Jefferson City Sch. Dist. v. Moody's Investor's Servs.*, 175 F.3d 848, 859 (10th Cir. 1999)).

[28] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006).

[29] *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

[30] The only exceptions to this rule are: (1) documents that the complaint incorporates by reference; (2) documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity; and (3) matters on which a court may take judicial notice. *Gee*, 627 F.3d at 1186.

Qwest argues that Mr. Pengra's claims, even if properly amended as §301 hybrid claims,[31] are untimely because the six-month statute of limitations has passed.  Mr. Pengra agrees with Qwest that the applicable statute of limitations for a §301 hybrid claim is six months as set forth by the Supreme Court in *DelCostello v. International Brotherhood of Teamsters*.  The question, then, is when Mr. Pengra's claims begin to accrue for purposes of the statute of limitations.

The limitation period in hybrid §301 suits begins to run "when an employee knows or in the exercise of reasonable diligence should have known or discovered the acts constituting the union's alleged violations."[32]  Defendant argues that the deadline to file Mr. Pengra's lawsuit was April 2011 because the "alleged violation" described in Mr. Pengra's complaint occurred "sometime in 2009" or at the latest "October 2010."  Mr. Pengra's Complaint alleges a breach of contract by Qwest, not a breach of the Union's duty of fair representation.[33]  There is nothing in Mr. Pengra's Complaint that would conclusively show when Mr. Pengra knew or should have known of the Union's alleged violations.[34]  There is also nothing in Mr. Pengra's Complaint discussing whether (and when) Mr. Pengra filed a formal grievance with the Union or Qwest

---

[31] In order for Mr. Pengra's §301 claims to be proper, he must either (1) show that he exhausted his administrative remedies or (2) file a §301 hybrid claim alleging that the Union breached its duty of fair representation.  *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163-65 (1983).

[32] *Lucas v. Mountain States Tel. & Tel.*, 909 F.2d 419, 420-21 (10th Cir. 1990).

[33] A hybrid claim "accrues against a company defendant at the same time it accrues against a union defendant, since the predicate for the entire action is that the union breached its duty of fair representation."  *Bloedow v. CSX Transp., Inc.*, 319 F.Supp.2d 782, 786-87 (N.D. Ohio 2004).

[34] It is also not clear that the Union did in fact breach its duty.

Corporation, which might have tolled the statute of limitations period.[35]  Just because Mr. Pengra failed to make certain allegations in his Complaint does not mean that he will be unable to do so later.  In other words, there is nothing in Mr. Pengra's current Complaint which completely forecloses some set of allegations upon which a hybrid §301 claim would be barred by the applicable statute of limitations.

Qwest also argues that where the collective bargaining agreement does not expressly permit reopening of a grievance, Mr. Pengra's efforts to do so do not toll or re-trigger the statute of limitations.[36]  According to Qwest, this reasoning applies here because the CBA between the Union and Qwest Corporation does not expressly permit a reopening of a grievance.  While that may be true, Mr. Pengra is not seeking to reopen an old grievance.  His Complaint alleges that Qwest is in violation of the Amendment to the Settlement Agreement, which is a new matter, different than the one that led to the Amendment.[37]  Even if Mr. Pengra was reopening an old grievance, it is not clear when the Union breached its duty of fair representation or when Mr. Pengra knew or should have known of the Union's breach.  Thus, the Court will permit Mr. Pengra to file an amended complaint asserting hybrid claims under §301 claim to the extent such claims are available.

---

[35] *See Long v. Gen. Motors Corp.*, 19 F. App'x. 200, 202 (6th Cir. 2001) (the statute of limitations can be tolled if employee invokes formal grievance procedures or in cases where defendant union fraudulently concealed the fact that it was not pursuing employee's claims); *Lucas*, 909 F.2d at 421-22.

[36] *See Helms v. Yellow Freight Sys. Inc.*, 721 F. Supp. 277, 280 (D. Kan. 1989).

[37] Mr. Pengra's first grievance was for wrongful termination.  After being reinstated by Qwest Corporation, his second grievance was that he was not reinstated to Qwest Corporation's Park City office.  His latest grievance is for an alleged breach of the Amendment.

IV.  CONCLUSION

Based on the foregoing, it is therefore

ORDERED that Defendant's Motion to Dismiss[38] is GRANTED IN PART AND DENIED IN PART.  Plaintiff's First Amended Compliant is dismissed as against Defendant Qwest Communications, LLC.  Plaintiff may file an amended complaint against Qwest Corporation alleging claims under §301 within 14 days.  The Court is not ruling on the validity of any such claims in this order.

DATED   March 8, 2012.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[38] Docket No. 2.