IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| TERENCE PENGRA<br><br>    Plaintiff,<br><br>vs.<br><br>QWEST CORPORATION, COMMUNICATION WORKERS OF AMERICA,<br><br>    Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANT QWEST CORPORATION'S MOTION TO DISMISS<br><br><br>Case No. 2:11-CV-1034 TS |

This matter is before the Court on Defendant Qwest Corporation's ("Qwest") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6).[1]

I.  BACKGROUND

Qwest moves to dismiss Plaintiff Terence Pengra's ("Mr. Pengra") Second Amended Complaint.  The Court previously granted leave to allow Mr. Pengra to file an amended complaint in order to assert claims against Qwest pursuant to § 301 of the Labor Management Relations Act ("LMRA").[2]

Mr. Pengra originally worked for Qwest in Park City, Utah until he was terminated in 2004 or 2005.[3]  Mr. Pengra successfully challenged his termination through the Communications

---

[1] Docket No. 13.

[2] Docket No. 11, at 10.

[3] Docket No. 12, at 3.

1

Workers of America (the "CWA") under the Collective Bargaining Agreement ("CBA") between Qwest and the CWA.[4] In September 2005, pursuant to a settlement agreement, Mr. Pengra was reinstated to work in Qwest's Provo, Utah office.[5] However, Mr. Pengra was under the impression that he would be reinstated where he had previously worked, in Qwest's Park City, Utah office.[6] Mr. Pengra formally complained about this situation and as a result Qwest and the CWA agreed to an amended settlement agreement.[7]

The amended settlement agreement provided that Mr. Pengra would be given priority to transfer to an available position in the Park City office.[8] Mr. Pengra alleges that Qwest breached the amended settlement agreement by transferring two individuals to the Park City office in 2007 and 2009.[9] Mr. Pengra alleges that he repeatedly questioned and complained to Qwest because he believed those transfers were a violation of the amended settlement agreement.[10] Allegedly, he was told that the company had the right to transfer those individuals without violating the amended settlement agreement.[11]

According to Mr. Pengra, he sought the help of the CWA in order to have the amended settlement agreement enforced.[12] Mr. Pengra claims to have had two phone conversations with

---

[4] *Id.*

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.* at 5–6.

[8] *Id.* at 7.

[9] *Id.* at 8.

[10] *Id.*

[11] *Id.*

[12] *Id.*

Annette Cunningham ("Ms. Cunningham"), an individual he believed was the CWA president.[13] In the first conversation, he alleges Ms. Cunningham said she would look into the matter.[14] In the second conversation, Mr. Pengra alleges that Ms. Cunningham requested a copy of the amended settlement agreement because the CWA had apparently lost its copy.[15] Mr. Pengra further alleges that from this point forward Ms. Cunningham did not take any further action in response to Mr. Pengra's requests for enforcement of the amended settlement agreement.[16]

Mr. Pengra alleges his attorney sent a letter to Qwest and CWA officials on February 23, 2011, notifying them of Mr. Pengra's concerns about non-compliance with the amended settlement agreement.[17] He further alleges that, other than a response from Qwest's in-house attorney indicating that they would look into the matter, no further action or communication has taken place to resolve the matter.[18] In the Second Amended Complaint, Mr. Pengra alleges that Qwest's failure to comply with the amended settlement agreement on behalf of Mr. Pengra violates § 301 of the LMRA.[19] Mr. Pengra also alleges that the CWA's failure to seek enforcement of the agreement is a breach of the duty of fair representation.[20]

Qwest moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because: 1) Plaintiff has not alleged arbitrary,

---

[13] *Id.*

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] *Id.*

[19] *Id.* at 10.

[20] *Id.*

discriminatory, or bad faith conduct by the union; 2) Plaintiff has not alleged that he exhausted his administrative remedies; and 3) Plaintiff has not filed a claim within the statute of limitations.

## II. STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[21] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[22] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[23] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[24]

## III. ANALYSIS

A.  THE DUTY OF FAIR REPRESENTATION

A hybrid claim under § 301 of the LMRA is a claim against either the CWA, Qwest, or both.[25] An essential element to a hybrid § 301 claim against either the CWA or Qwest is a demonstration that the union breached its duty of fair representation.[26] A breach of the duty of fair representation by a union is representative conduct that is of a "discriminatory, dishonest,

---

[21] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[22] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[23] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

[24] *Id.* (quoting *Twombly*, 550 U.S. at 557) (alteration in original).

[25] *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983).

[26] *Id.* at 165.

arbitrary, or perfunctory fashion."[27]  Qwest argues that Mr. Pengra fails to sufficiently plead that the CWA's conduct breached its duty of fair representation.[28]  "A union's actions are arbitrary only if, in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a 'wide range of reasonableness' as to be irrational."[29]  In Mr. Pengra's Second Amended Complaint he states,

> At the present time, [Mr. Pengra] is not alleging the Union fraudulently concealed the fact that it was not pursuing his claims or affirmatively led him to believe it was pursuing his claims when it was, in fact, not doing so.  Rather, he is alleging the Union should have taken decisive action to enforce the Amendment and remedy any violations [and] failed to take any action at all.[30]

There are no allegations by Mr. Pengra that the CWA's inaction was in response to any formal grievance filed by Mr. Pengra.  The Court's examination of formal union decisions and negotiations must be highly deferential.[31]  This deference is essential to ensuring the effectiveness of collective bargaining.[32]  Mr. Pengra's assertion is simply that no action was taken by the CWA, not that the CWA was acting in an arbitrary or discriminatory fashion.  Because Mr. Pengra claims that the CWA's inaction was not in response to a formal grievance and that it was not fraudulent in nature, the Court finds that Mr. Pengra's Second Amended

---

[27] *Id.* at 164.

[28] Docket No. 14, at 6–7.

[29] *Young v. United Auto. Workers-Labor Emp't & Training Corp.*, 95 F.3d 992, 997 (10th Cir. 1986).

[30] Docket No. 12, at 14.

[31] *Young*, 95 F.3d at 997 (quoting *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991)).

[32] *Id.* (citing *Int'l Bhd. of Elec. Workers v. Foust*, 442 U.S. 554, 571 (1976)).

Complaint does not sufficiently plead that the CWA's conduct was so "outside a 'wide range of reasonableness' as to be irrational."

B.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

Mr. Pengra must demonstrate that he first exhausted all available grievance or arbitration remedies through the union before he can bring suit against his employer to make a successful hybrid claim under § 301 of the LMRA.[33]  In the Second Amended Complaint, Mr. Pengra states "he exhausted his administrative remedies."[34]  Such a conclusory claim is insufficient under *Twombly* and *Iqbal*.  Additionally, in the Second Amended Complaint, Mr. Pengra states that he "did not actually and personally invoke any formal grievance procedures."[35]  Although Mr. Pengra "repeatedly questioned" and "raised complaints" to Qwest, such actions fall short of satisfying the CBA's grievance and arbitration process.[36]

In his Second Amended Complaint, Mr. Pengra contends that that the February 23, 2011 letter served as a formal request for fair representation.[37]  However, this letter fails to comply with the CBA grievance process because the request was not made within thirty days of the events giving rise to the grievance.  There are no additional allegations that Mr. Pengra took formal steps to resolve the issue with either the CWA or Quest.  Merely complaining verbally falls short of a formal complaint under the CBA.  For the foregoing reasons, the Court finds that Mr. Pengra has failed to sufficiently plead that he exhausted his administrative remedies.

---

[33] *DelCostello*, 462 U.S. at 164–65.

[34] Docket No. 12, at 12.

[35] *Id.* at 14.

[36] *See* Docket No. 3, at 20–26.

[37] Docket No. 12, at 13.

C.      STATUTE OF LIMITATIONS

The statute of limitations for a claim under § 301 of the LMRA is six months.[38] Because the Second Amended Complaint fails to state a claim upon which relief can be granted the Court finds that a determination of whether or not Mr. Pengra has satisfied the statute of limitations is irrelevant and will not address this issue.

## IV.  CONCLUSION

Based on the forgoing, the Court finds that Mr. Pengra has failed to state a claim upon which relief can be granted and will therefore grant Qwest's Motion to Dismiss.

It is therefore ORDERED that Defendant Qwest Corporation's Motion to Dismiss (Docket No. 12) is GRANTED.  The Clerk of the Court instructed to close this case forthwith.

DATED  July 6, 2012.

                                              BY THE COURT:

                                              _____
                                              TED STEWART
                                              United States District Judge

---

[38] *DelCostello*, 462 U.S. at 158.